Lou M. Daughraty, Admx. *vs.* Leilla Tebbets.

## Oxford.    Opinion April 6, 1923.

*The evidence of negligence of defendant sufficient to warrant the finding of the jury for plaintiff, and the evidence authorizing the jury to find the plaintiff exercised reasonable care, cannot be declared, as a matter of law, as being not sufficiently substantial.*

In the instant case wherever there was any controversy in the testimony, in determining the issue the Law Court must proceed upon the theory that the jury had a right to accept all the testimony of the plaintiff's side as true, and to reject all the testimony of the defendant's side as untrue, mistaken or unsatisfactory, unless the testimony, including the circumstances and probabilities, reveals a situation that proves the testimony on the plaintiff's side to be inherently wrong.

Upon the practically undisputed facts two questions arise: First, was the defendant negligent; Second, if so, was the plaintiff guilty of contributory negligence.

There was sufficient evidence to warrant the affirmative finding of the jury upon the first question. It cannot be declared as a matter of law that there was no substantial evidence upon which the jury was authorized to find the exercise of reasonable care on the part of the plaintiff. The general motion should be overruled. The special motion for setting aside the verdict is merely stated but not discussed in the defendant's brief. We think he discovered that it was without merit.

On motion. This action was brought by plaintiff as the administratrix of the estate of Lyman H. Daughraty against defendant to recover damages for personal injuries sustained by her intestate by being run over by the defendant's automobile on October 29, 1921, on a highway in the town of Oxford and so seriously injured that death ensued on November 4, following. Defendant filed the general issue and under a brief statement alleged no negligence on the part of defendant, and contributory negligence on the part of the intestate. The case was tried to a jury and a verdict for $5000 was rendered for plaintiff. Defendant filed a general motion for a new trial, and also filed a special motion for a new trial on the ground that the jury was sent out to dinner by the presiding Justice, accompanied besides the regular officer, by the court messenger who was not a sworn officer. Both motions overruled.

The case is fully stated in the opinion.

*Alton C. Wheeler and Frederick R. Dyer,* for plaintiff.

*Frank A. Morey and Walter L. Gray,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, MORRILL, WILSON, DEASY, JJ.

DUNN, MORRILL, WILSON, JJ. did not concur.

SPEAR, J. This case comes up on a general motion and a special motion based upon the alleged interference with the jury by a court officer. The case involves an automobile action in which the plaintiff's intestate, who will hereafter be called the plaintiff, received injuries on October 29, 1921, from which he died on November 4th following. A verdict was found in favor of the plaintiff, and the general motion is to set aside that verdict. No exceptions were taken and the charge of the jury must be regarded as a proper and adequate statement of the law. The burden which the proponent of a motion to overturn a verdict assumes has been too long and too often declared to require citation. There is very little controversy in the present testimony. However, wherever a controversy did arise, in determining the issue the Law Court must proceed upon the theory that the jury had a right to accept all the testimony of the plaintiff's side as true, and to reject all the testimony of the defendant's side as untrue, mistaken, or unsatisfactory, unless the testimony,

including the circumstances and probabilities, reveals a situation that proves the testimony on the plaintiff's side to be inherently wrong.

The facts determined from the testimony are substantially as follows: On October 29, 1921, Mr. Lyman H. Daughraty, the plaintiff, was proceeding in a northerly direction on the cement highway leading from Lewiston toward South Paris. He stopped his Studebaker automobile on the right hand side of the cement strip and presumably obtained a pail of water for the radiator of his car by crossing to the Charles house on the left hand side of the road and recrossing the road to his automobile, the cement part at this point being eighteen feet in width and having a strip of gravel road several feet wide on each side of the cement. When Mr. Daughraty started toward the house, presumably to return the empty pail, he was struck by the defendant's car, also proceeding northerly. His body was carried fifty feet before it fell from the car. He was left in the dooryard of the Charles place, while the defendant's automobile continued eighteen feet further before it was brought to a stop, after turning nearly a right angle into the Charles dooryard and plowing the turf out of the ground to a depth of six or eight inches and covering an area of two feet and one half in circumference. Upon the practically undisputed facts two questions arise: First, was the defendant negligent? Second, if so, was the plaintiff guilty of contributory negligence? In view of the numerous fatalities that are daily occurring, due to the mania for overspeeding automobiles, and the lack of control, due thereto, whenever an automobile or team appears to be stationary upon the road or roadside, the standard of due care on the part of an operator in approaching a car or team thus standing should be made commensurate with the danger involved. We are, therefore, of the opinion that it is wise to enunciate a rule that will save life rather than one that will jeopardize it; and that it should be held, in order to meet the proper standard of due care, in approaching a stationary car or team, that the operator of the moving car should be charged with the duty of observing, whether any person or persons are connected with such car or team, and should have his car under such control, in passing such car or team, as to avoid an accident with any person or persons, who may be around or about such car or team, or who attempts to cross the road in front of the oncoming car, provided such person or persons

are themselves in the exercise of due care. The force of this rule applies with emphasis when the moving car is approaching the standing car or team from the rear. With the top up, as is now well nigh the universal custom, the standing car is more likely than not to conceal some person or persons who may be about the front of the car for various reasons, and may even hide little children from view, who may at any moment dart into the road in the pursuit of childish play.

Under the above standard, upon the first question we are of the opinion that the jury had before them sufficient evidence to warrant them in coming to the conclusion, that the defendant was negligent in driving at a rate of speed which they might well have regarded as unreasonable, based upon the fact that she saw the plaintiff car sitting beside the road; upon the evidence that by the driver's own testimony she did not put on her brakes; and upon the further undisputed fact that the car turned a right angle, tore up the turf of the area of a bushel basket and went sixty-eight feet before it was stopped. These unquestioned facts point to a rate of speed which the jury may have regarded as reckless. And we think if that was their judgment they had evidence upon which to base it.

The second question, whether the plaintiff was in the exercise of due care, was a pure question of fact, under all the circumstances of the case, for the jury. The jury was as able to determine that question as the Law Court even if the Law Court had jury powers. It was the opinion of the jury that he was not negligent. It might be our opinion that he was. But that does not confer upon us a right to negative their judgment. If there was evidence upon which reasonable men might disagree the verdict should not be disturbed. The jury were the only tribunal that could try the case. They heard the evidence, and the parties were before them. Just what reasonable care required, under the circumstances in which the plaintiff found himself when he started to cross the road, when confronted by the oncoming car at an unreasonable rate of speed, as the jury had a right to find, is a question, that, probably, cannot be decided by any definite standard of action. As a matter of common knowledge and experience, the situation before the plaintiff, was sudden and confusing, and created an emergency in which the concept of hesitation and action arose together, like a flash. He had evidently started to cross the road for the purpose of returning the

pail to the Charles house. His mind was on doing that thing. He had to make up his mind in an instant. His judgment was that he could make the crossing with safety. He may have misjudged the speed of the approaching car. If he did make the crossing, however, his judgment proved to be right even in the circumstances of confusion. If he did not make it in view of the circumstances and the psychology of the situation must he be charged with negligence? We think whether he must was a question of fact for the judgment of twelve level-headed men sitting under the sanction of law and guided by the conceded correct instructions of the presiding Justice.

In the case at bar, however, the plaintiff did make the crossing and was hit on the extreme opposite side of the road where the concrete and the gravel come together. His judgment was not in error. There was ample space between the place where the accident occurred and the place where the plaintiff's car was standing to enable the defendant car to have passed entirely free from contact with the plaintiff, if her car had been under such control as would have enabled her to manage and guide it. The speed that carried the body of the plaintiff fifty feet after the car struck him, and the car eighteen feet further before it stopped, after turning a right angle and tearing up the turf over an area as large as a bushel basket and six or eight inches deep, was evidence from which the jury had the right to, and undoubtedly did, come to the conclusion that the car was coming at a furious pace. We think the plaintiff had a right to assume, in the exercise of his judgment, when he actually had time to cross the road, that the defendant car would not be so far beyond control as to attack him in the very place of safety which his judgment told him he could make, and which, as an undisputed fact, he did make. We are of the opinion, that it cannot be declared, as a matter of law, that there was no substantial evidence upon which the jury was authorized to find the exercise of reasonable care on the part of the plaintiff.

The general motion should be overruled.

The special motion for setting aside the verdict is merely stated but not discussed in the defendant's brief. We think he discovered that it was without merit. The case shows that the messenger, not a sworn officer of the court, accompanied the jury to their lunch and sat with them a few minutes at the table. During the time he was present no conversation whatever took place regarding any phase of

the case. In a few minutes it was discovered by an officer that an error had been made and a sworn deputy then relieved the messenger and took a place with the jury himself. While the courts are jealous of guarding the sanctity of the deliberations of juries, yet they never have gone so far as to set aside a verdict on account of irregularity when it affirmatively appears that the jury in no way could have been, or were, influenced by such irregularity. Even in a murder case in the Federal Court, where the jury was in charge of a deputy sheriff who had not been sworn as a bailiff, the court held after conviction of respondent and upon a motion to set aside the verdict, that "There was nothing tending to show that the jury was exposed to any influence that might interfere with impartial performance of their duties or in any way prejudice the decision, and overruled the motion." 163 U. S., 662. There are numerous cases to the same effect.

The special motion should also be denied. The mandate, therefore, must be,

*Both motions overruled.*